Anna BEAR, Plaintiff,

v.

IOWA DISTRICT COURT FOR TAMA COUNTY, Defendant.

No. 94–1813.

Supreme Court of Iowa.

Nov. 22, 1995.

Patrick L. Wilson of the Wilson Law Office, Marshalltown, for plaintiff.

Roger R. Schoell of Grimes, Buck, Schoell & Beach, Marshalltown, for defendant.

Considered by LARSON, P.J., and CARTER, NEUMAN, ANDREASEN and TERNUS, JJ.

ANDREASEN, Justice.

This is a certiorari proceeding challenging a district court order that held Anna Bear in contempt of court for violating a permanent injunction previously ordered by the court. We uphold the district court's ruling that Anna's actions were in willful violation of the permanent injunction. Accordingly, the writ of certiorari is annulled.

I. *Background Facts and Proceedings.*

In July 1980 the Tribal Council of the Sac and Fox Tribe of the Mississippi in Iowa filed a petition seeking a permanent injunction against Anna and her husband, Archie Bear, enjoining them from interfering with any governmental activities of the Tribal Council. The Tribal Council, which is the governing body of the tribe, had begun implementation of plans for housing on the settlement for members of the tribe. Anna and Archie, who live on the settlement, challenged the Tribal Council's authority and interfered with the Tribal Council's plans. In May 1981 the district court enjoined Anna and Archie from interfering with "the actions of the Tribal Council or its agents in the establishment of the housing project and the public sewer system on the settlement." It further enjoined Anna and Archie from harassing employees of the Tribal Council at their offices.

In July 1994 the Tribal Council began construction of a house near the home of Anna and Archie. Anna believed Archie was the lawful owner of the land where the house was being constructed. Utility workers who went to the settlement to install electrical service to the proposed housing site were met on the road by Anna and Archie. Anna told the workers they were not welcome and ordered them to leave the property. She was armed with a club and said she was not afraid to use it. She also told an employee of the utility company that she would do whatever it took to keep the electrical crew or anybody else

out, and she was willing to go to jail to keep them out. The utility workers were unable to establish electrical service as a result of the interference by Anna.

The Tribal Council filed an application for contempt alleging Anna and Archie had violated the permanent injunction. Anna admitted that it was her intention to prevent the construction of housing on the site by the Tribal Council. On October 13, 1994, the court found Anna had willfully violated the permanent injunction by threatening utility workers and interfering with the tribe's attempt to build housing on the settlement. The application against Archie was dismissed and the court sentenced Anna to serve ten days in the Tama county jail.

Anna filed a petition for writ of certiorari requesting the ruling of the district court be annulled and a stay be granted pending the outcome of the petition. We granted the requested stay and petition.

II. *Scope of Review.*

■ Certiorari is an action at law to test the legality of action taken by a district court or tribunal. Iowa R.Civ.P. 306; *Zimmermann v. Iowa Dist. Court,* 480 N.W.2d 70, 74 (Iowa 1992). Our review is for correction of errors at law and not de novo. *Amro v. Iowa Dist. Court,* 429 N.W.2d 135, 140 (Iowa 1988). The factual findings of the district court are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Zimmermann,* 480 N.W.2d at 74.

III. *Discussion.*

■ An action for contempt of court is treated as a criminal proceeding and no person may be punished unless the contempt is established by proof beyond a reasonable doubt. *Amro,* 429 N.W.2d at 140; *Phillips v. Iowa Dist. Court,* 380 N.W.2d 706, 709 (Iowa 1986). There are two defenses available in a contempt proceeding: (1) absence of willfulness in disobeying the order, and (2) indefiniteness or uncertainty of the order. *In re Marriage of Jacobo,* 526 N.W.2d 859, 866 (Iowa 1995). An injunction "must be clear, definite and unambiguous before it may provide a basis for contempt." *Palmer College*

*of Chiropractic v. Iowa Dist. Court,* 412 N.W.2d 617, 620 (Iowa 1987).

■ In construing the injunction, effect should be given to every word, if possible, to give the injunction as a whole a consistent and reasonable meaning. *See In re Marriage of Lawson,* 409 N.W.2d 181, 182–83 (Iowa 1987). Effect should also "be given to that which is clearly implied as well as that which is expressed." *Id.* at 182. We consider "the spirit as well as the letter of the injunction to determine if its intent has been honestly and fairly obeyed." *Orkin Exterminating Co. v. Burnett,* 160 N.W.2d 427, 431 (Iowa 1968).

■ In the 1981 permanent injunction, the court found that the "Tribal Council has developed plans and [has] begun implementation thereof for housing for the benefit of those in the tribe who are eligible and also a treatment lagoon system." The court held that the Tribal Council sufficiently proved that Anna and Archie had committed unlawful acts detrimental to the Tribal Council and to all other tribe members living on the settlement. The court then stated the following:

> The Defendants have threatened to commit like acts in the future and an injunction against the Defendants is necessary for the protection of the public interest and welfare of those members of the tribe living on the settlement, and also to prevent unauthorized acts toward the Tribal Council or its agents.

The court entered the following decree:

> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the Defendants and each of them are hereby enjoined from committing any acts that in any manner or by any means obstruct or interfere with or prevent the actions of the Tribal Council or its agents in the establishment and construction of the housing project and the public sewer system on the settlement. Defendants are also enjoined from further harassing employees of the Tribal Council at the offices of the Tribal Council on the settlement.

Anna does not dispute that it was her intention to prevent the housing construction near her home. Anna contends, however, that her interference with the construction in 1994 does not fall within the terms of the 1981 injunction. She urges the language of the injunction speaks directly to the housing and sewer system being constructed in 1981, and the present housing site was not contemplated by the court. Anna focuses on the phrase "*the* housing project and *the* public sewer system on the settlement" and argues that the present housing construction is not a part of "*the* housing project" referred to in the permanent injunction order.

■ A permanent injunction is issued primarily to prevent future acts of harm and, unless specified otherwise in the order, is unlimited in respect of time. *See 205 Corp. v. Brandow,* 517 N.W.2d 548, 553 (Iowa 1994); *Condura Constr. Co. v. Milwaukee Bldg. & Constr. Trades Council AFL,* 8 Wis.2d 541, 99 N.W.2d 751, 755 (1959) (Permanent injunctions "are permanent so long as the conditions which produce the injunction remain permanent."); 42 Am.Jur.2d *Injunctions* §§ 4, 9, 323 (1969). The court which rendered the injunction may modify or vacate the injunction if, over time, there has been a substantial change in the facts or law. *Helmkamp v. Clark Ready Mix Co.,* 249 N.W.2d 655, 656 (Iowa 1977); 42 Am.Jur.2d *Injunctions* §§ 317, 318, 334 (1969). The mere passage of time, however, does not invalidate a permanent injunction. *See Building & Constr. Trades Council v. NLRB,* 64 F.3d 880, 889 (3rd Cir.1995) (unwilling to hold that mere passage of time and temporary compliance are sufficient to warrant lifting an injunction); *Sassower v. American Bar Ass'n,* 33 F.3d 733, 735 (7th Cir.1994) ("Until stayed or set aside on appeal, an injunction must be obeyed.").

We conclude that the language of the injunction was sufficiently definite and certain to apply to Anna's acts of interference with the Tribal Council's housing construction in 1994. Although Anna was enjoined because of her interference with the housing project in 1981, the court clearly expressed an intention to prevent Anna from committing "like acts in the future" and "unauthorized acts toward the Tribal Council or its agents." The injunction clearly applies beyond 1981 to

prevent Anna from interfering in the future with the Tribal Council's housing projects. Furthermore, the injunction did not specify any particular housing site, but enjoined Anna from interfering with the Tribal Council or its agents in the "establishment and construction of the housing project ... *on the settlement.*" The use of the phrase "on the settlement" is a clear indication the court intended the injunction to apply to tribal housing construction throughout the settlement.

By Anna's own admission, she intended and attempted to prevent the Tribal Council's construction of housing near her home in 1994. We conclude that the district court's ruling that Anna's actions were in willful violation of the permanent injunction was established by proof beyond a reasonable doubt. Accordingly, the writ of certiorari is annulled.

**WRIT ANNULLED.**