**IN THE COURT OF APPEALS OF IOWA**

No. 14-1255
Filed March 25, 2015

**MICHAEL WIESKAMP and**
**LINDA WIESKAMP,**
        Petitioners-Appellees,

**vs.**

**DANIEL M. KELLEY JR.,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        Daniel Kelley appeals from the district court order modifying an injunction.

**AFFIRMED.**


        Catherine C. Dietz-Kilen of Harrison & Dietz-Kilen, P.L.C., Des Moines, for

appellant.

        R. Ronald Pogge and Rebecca E. Reif of Hopkins & Huebner, P.C., Des

Moines, for appellees.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**McDONALD, J.,**

This case involves a dispute among family members regarding the contact to be allowed between Daniel Kelley and his elderly, ailing father-in-law Richard Wieskamp. Daniel is married to Richard's daughter Susan. Two of Richard's other children, Michael and Linda Wieskamp, serve as Richard's co-guardians and co-conservators. In July 2012, the district court entered a stipulated order enjoining Daniel from performing maintenance work on Richard's home and from being present at Richard's home unless Richard first invited him to be there. The reasons Michael and Linda sought injunctive relief were that Daniel's maintenance work was actually causing damage to Richard's property and that Richard no longer wished to have contact with Daniel. After the court entered the injunction, Richard moved to an independent living facility. Subsequent to the move, Michael and Linda sought to modify the injunction to reflect Richard's new address and to prohibit any visitation between Daniel and Richard unless Michael or Linda consented to and supervised the visitation. The district court granted the application to modify the injunction, and Daniel timely filed this appeal.

I.

The district court's authority to issue injunctive relief arises in equity, and our review is de novo. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 180 (Iowa 2001); *Skow v. Goforth*, 618 N.W.2d 275, 277 (Iowa 2000); *Helmkamp v. Clark Ready Mix Co.*, 249 N.W.2d 655, 657 (Iowa 1977) (applying de novo review to modification). Yet, the decision to issue, vacate, or modify an injunction rests largely within the discretion of the district court. *See Max 100 L.C.*, 621

N.W.2d at 180. We give weight to the district court's findings of fact, especially concerning the credibility of witnesses, but are not bound by them. *See Fettkether v. City of Readlyn*, 595 N.W.2d 807, 811 (Iowa Ct. App. 1999). The court that rendered the injunction may modify or vacate the injunction if, over time, there has been a substantial change in the facts or law. *See Bear v. Iowa Dist. Ct.*, 540 N.W.2d 439, 441 (Iowa 1999). "Thus, we will not generally interfere with the district court decision unless the discretion has been abused or the decision violates some principle of equity." *Max 100 L.C.*, 621 N.W.2d at 180.

II.

A.

Daniel contends the court did not have the authority to modify the injunction in the manner it did. He argues first that the modification order is not a "modification" but instead a wholly new injunction requiring greater proof. The ground for his argument is that the modified injunction purportedly contradicts the express terms of the original order. He argues second that modification is allowed only to vacate or lessen, not increase, the restrictions of a previously issued injunction. Michael and Linda contend Daniel did not preserve error on the issue of whether the district court had the authority to modify the injunction in the manner it did. *See Teamster's Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 713 (Iowa 2005). We conclude error was preserved on this issue, and we address the claim on the merits.

On de novo review, we conclude the district court did not abuse its discretion or otherwise violate some principle of equity in modifying the

injunction. *See Max 100 L.C.*, 621 N.W.2d at 180. The prior injunction prohibited Daniel from having uninvited contact with Richard at Richard's home. The modified injunction does not in any way contradict the prior order. Instead, the modification reflects Richard's new address, a modification to which Daniel agreed. In addition, the modification adds another layer of protection for Richard by putting Michael and Linda in the position of approving and supervising Daniel's contact with Richard. While Daniel is correct that many modification cases arise in the context of one party seeking to vacate or lessen the restrictions in an injunction, *see, e.g.*, *Helmkamp*, 249 N.W.2d at 656, there is nothing that prohibits the court from increasing the scope of enjoined conduct if the evidence so supports the request. *See Max 100 L.C.*, 621 N.W.2d at 180; *Bear*, 540 N.W.2d at 441. As discussed below, we conclude the evidence supports the modification.

## B.

Daniel contends there is insufficient evidence supporting the modification. By way of background, as relevant here, between July 2012 and July 2013, Richard moved from his home—which was the property protected in the original injunction—to McAuley Terrace, an independent living facility of the Bishop Drumm Retirement Center in Johnston, Iowa. One day in November 2013, after Susan visited Richard at McAuley Terrace, she told Daniel that Richard wanted him to call. Daniel said that he could not call Richard and that Richard needed to call him. Susan then called Richard and gave the phone to Daniel. After this initial telephone conversation, Daniel started visiting Richard at McAuley Terrace

beginning in November 2013. The evidence showed Daniel visited Richard on approximately fifteen occasions and took Richard to lunch off-property on approximately four occasions.

After Michael and Linda learned Daniel was again visiting with Richard, they filed the instant application to modify the prior injunction due to their belief that Daniel's continued visitation with Richard created a risk of harm to Richard's emotional and physical health. As Richard's co-guardians and co-conservators, they had a statutory obligation to act in Richard's best interest. At the hearing on the modification action, Heather Rehmer, administrator and director of operations of the Bishop Drumm campus, testified she had seen a decline in Richard's mental or cognitive state "within the last several months." She expressed some concern about Daniel's visits with Richard and agreed it would be better if Daniel's visits with Richard were supervised.

Michael testified Richard was physically frail. Concerning changes since the initial injunction, Michael testified:

> Dad has become physically more frail, doesn't have stamina, doesn't have the strength he did. He's much more frail. He has developed an inability to—he's a fall risk, I will put it this way. His equilibrium has diminshed. He's just not the person he was two years ago from a physical state. Emotionally, he's a bit more frail as well. He has a limited perception of things and times. He's easily confused. He forgets. He has declined, in my opinion, both emotionally and physically.

Michael testified Richard needs more supervision and guidance. When asked about Richard's demeanor following visitation with Daniel, Michael testified that Richard was "withdrawn, depressed, made statements that are not consistent with his normal behavior, normal frame of mind. He's made comments that were

pretty self-deprecating. He just wasn't himself." Michael expressed his opinion it was not in Richard's best interest to have contact with Daniel. One reason was the negative changes such visits were causing in Richard's demeanor. The second reason was the increased risk of falling due to Daniel taking Richard off-property for lunch.

On de novo review of the record, recognizing the district court's discretion to modify injunctive relief, we conclude the Wieskamps established a change in circumstances supporting modification of the injunction. *See Bear*, 540 N.W.2d at 441 (recognizing modification is permissible if "there has been a substantial change in the facts or law"). While Daniel disagrees with the conclusions of Michael and Heather Rehmer, their testimony establishes that unsupervised visitation may pose emotional and physical harm to Richard. It should be noted the district court did not disallow visitation, the district court only required that such visitation be supervised. This better protects Richard's mental and physical condition without imposing a significant burden on Daniel.

## C.

Daniel contends "the relief petitioners obtained restricts the ability of their ward to maintain a friendship of thirty-six years, and is an issue that is appropriate for probate court where clear and convincing proof will be required and the ward would have notice and an opportunity to participate." In essence, Daniel argues that this action should have been initiated in probate court and that Richard has rights as a ward that should be considered. We question whether Daniel has standing to assert Richard's rights as the ward. We need not decide

that issue, however, because Daniel failed to preserve the issue for appellate review. While Daniel did raise the issue in his briefing to the district court, the district court did not rule on the issue. Daniel did not file a posttrial motion seeking a ruling. Accordingly, error is not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see also Lamasters v. State*, 821 N.W.2d 856, 863-64 (Iowa 2012).

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**