## IN THE COURT OF APPEALS OF IOWA

No. 17-1672
Filed August 1, 2018

**WANDA HORN,**
     Plaintiff-Appellee,

**vs.**

**TIMOTHY ARNOLD HORN,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cedar County, Stuart P. Werling,

Judge.

Timothy Horn appeals from the district court order modifying a protective

order. **REVERSED AND REMANDED.**

M. Leanne Tyler of Tyler & Associates, P.C., Bettendorf, for appellant.

Courtney Thomas-Dusing of Iowa Legal Aid, Iowa City, for appellee.

Considered by Danilson, C.J., Mullins, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Timothy Horn (Tim) appeals from the district court order that modified an Iowa Code chapter 236 (2017) consent protective order. He contends the court applied the wrong standard in modifying the order and the evidence presented did not warrant modification. Wanda Horn (Wanda) argues that the court applied the proper standard but the appeal is moot as to one provision.

Based on our de novo review, we find the district court applied an incorrect legal standard in determining the consent protective order should be modified and insufficient evidence supported a finding of either a change in conditions or circumstances or that the parties cannot communicate in a civil manner. We therefore reverse the modification and reinstate the prior protective order, excluding the now moot provision.

## I. Procedural and Factual Background.

On July 18, 2017, Wanda filed a petition for relief from domestic abuse pursuant to Iowa Code section 236.3 against Tim. A temporary protective order was granted the same day. At the later hearing on the permanent protective order, the parties, both represented by counsel, agreed upon a protective order by consent agreement (consent order).[1] The consent order allowed the parties to communicate via text message or email in order to schedule times for Tim to complete work on the home the parties had been building in Tipton. The consent order granted Wanda exclusive possession of the Tipton home, except that Tim was allowed to work on the exterior two days a week, nine hours per day, until

---

[1] The consent order did not include a finding that Tim committed a domestic abuse assault against Wanda.

December 31, 2017. During those work times, Wanda was to vacate the house. Tim was not allowed to go inside the house; he could only work on the outside. The consent order also allowed Tim, who is a hunter, to retrieve his firearms from the Cedar County Sheriff on or after October 1, 2017, for use during hunting season.

On September 11, 2017, Wanda filed a request to modify the consent order alleging that Tim violated the order on September 7. Tim filed a resistance on September 21 denying any violation. At the contested modification hearing Tim was represented by counsel, and Wanda was self-represented. Both Wanda and Tim testified.

The parties, both fifty-six years of age, were married in 2004. Wanda has filed for dissolution of their marriage. Tim has children from a prior marriage who are now adults. He lives with a daughter who has cerebral palsy in a house he owns in Davenport. Wanda lives in the parties' residence in Tipton. Since the entry of the consent order, Wanda had surveillance cameras installed at the Tipton home. Wanda testified, "I am seeking modification due to the fact I have not been comfortable with it [the consent order] since it was signed by the judge." Contrary to her statement in the request to modify that Tim had violated the consent order, Wanda acknowledged that regarding contact with her, Tim had complied with the consent order. Wanda admitted she called Tim a "pansy" and that he tries to avoid confrontation. Her concern about Tim comes from watching the surveillance video from the first day Tim was at the Tipton home to work. She observed on the video that Tim constructed scaffolding but spent much of the time on the phone arranging the moving of equipment and not performing any other work. Wanda presented

no evidence that Tim violated the no-contact order—Tim had not contacted her inappropriately, threatened her in any way, entered the house, or committed any other prohibited act.

Following the close of the evidence, the court stated, "The issue that's before the court here is not whether or not [Tim] violated the terms of the no contact order. It is merely whether the no-contact order should be amended." The court then found "based on the inability of the parties to communicate in a civil manner, it is appropriate to modify the no-contact order." The court issued a modified protective order which provided, "[Tim] shall not come upon the premises where the protected party now lives . . . . The Cedar County Sheriff shall not release the firearms to [him] so long as this protective order is in place except or until this order is further modified." Tim filed a notice of appeal on October 20, 2017.

## II. Standard of Review.

As a general rule, proceedings pursuant to chapter 236 are in equity and our review is de novo. *See* Iowa R. App. P. 6.907; *Huntley v. Bacon*, No. 16–0044, 2016 WL 3271874, at *1 (Iowa Ct. App. June 15, 2016) ("We review a civil domestic abuse proceeding tried in equity de novo."). Wanda contends this particular proceeding was heard at law and our review should be for the correction of legal error. During the hearing on the protective order, the district court did rule on several objections and excluded some evidence that was wholly irrelevant to the proceedings. "[M]inimal objections made during the hearing d[o] not change the equitable nature of the proceedings." *Ewoldt v. Diffenderfer*, No. 15–1208, 2016 WL 3002760, at *2 n.2 (Iowa Ct. App. May 25, 2016); *see Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006) ("Although the district court ruled on

some evidentiary objections in the course of trial, the objections were minor and did not have a significant effect on the proceedings."). We thus conclude our review is do novo. "We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review." *Huntley*, 2016 WL 32718474, at *1. The court must satisfy itself "the petitioning party has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for issuing a protective order." *Id.; Nowell v. Nowell*, No. 15-2086, 2016 WL 5930896, at *1 (Iowa Ct. App. Oct. 12, 2016).

Our standard of review for questions of statutory interpretation is for correction of errors at law. *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 470 (Iowa 2017). "Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *State Pub. Def. v. Iowa Dist. Ct.*, 747 N.W.2d 218, 220 (Iowa 2008) (quoting *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998)). "Evidence is considered substantial when reasonable minds could accept it as adequate to reach a conclusion." *State v. Garrity*, 765 N.W.2d 592, 595 (Iowa 2009); *see Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018).

## III. Discussion.

### 1. The legal standard to modify a chapter 236 protective order.

Iowa Code section 236.5(2), provides in pertinent part:

> The court may amend or extend its order or a consent agreement at any time upon a petition filed by either party and after notice and hearing. The court may extend the order if the court, after hearing at which the defendant has the opportunity to be heard, finds that the defendant continues to pose a threat to the safety of the victim, persons residing with the victim, or members of the victim's immediate family.

Although this code section provides for extending or modifying a consent order, it only establishes a legal standard for extending; not for amending.

Iowa Code chapter 236 is to be liberally construed to effect its important protective purposes. *Krischke v. Iowa Dist. Ct.*, No. 03-0569, 2004 WL 1393956, at *2 (Iowa Ct. App. June 23, 2004). A party seeking a protective order pursuant to chapter 236 must prove, by a preponderance of the evidence, that the respondent committed domestic abuse. Iowa Code § 236.4(1). However, if the parties agree to the entry of a consent protective order, as here, then a finding of domestic abuse is not required. *Stewart v. Stewart*, 687 N.W.2d 116, 118 (Iowa Ct. App. 2004) ("In the absence of an actual consent agreement, it was not appropriate for the district court to enter a consent order. The court should have granted [the protected party's] request to offer evidence in support of her petition and then made appropriate findings regarding whether or not [the respondent] had engaged in domestic abuse.").

Since chapter 236 does not specify the standard needed to amend a protective order, common law injunction cases are a helpful guide of when amendments should be allowed. *See Vance*, 907 N.W.2d at 482 (stating "no contact orders are analogous to injunctions"). In *Vance*, the supreme court addressed whether a magistrate had jurisdiction to extend a no-contact order under Iowa Code chapter 664A. It found that the statute was ambiguous:

> Yet, "if reasonable minds could differ or be uncertain as to the meaning of the statute," the statute is ambiguous, and we must rely on our tools of statutory construction to resolve the ambiguity. In this case, both parties present reasonable interpretations of the statutes governing a magistrate's jurisdiction to extend no-contact orders in

simple misdemeanor cases. Therefore, we must use our customary principles of statutory construction to resolve this issue.

*Vance*, 907 N.W.2d at 477 (citation omitted). The court then went on to hold:

> "It is universally accepted that where statutory terms are ambiguous, courts should interpret the statute in a reasonable fashion to avoid absurd results."
> Additionally, although the statute does not explicitly provide the standard of proof a defendant must meet to show he or she no longer poses a threat, no-contact orders are "civil in nature and based only upon a determination of probable cause and a need to protect the safety of another." We have likewise previously noted that no-contact orders are analogous to injunctions.

*Vance*, 907 N.W.2d at 477, 482 (citations omitted). Cases regarding the modification of injunctions state that the court may modify or vacate an injunction "on proof of changed conditions." *Helmkamp v. Clark Ready Mix Co.*, 249 N.W.2d 655, 656 (Iowa 1977); 42 Am. Jur. 2d Injunctions § 287 (2018). *See also Bear v. Iowa Dist. Ct.,* 540 N.W.2d 439, 441 (Iowa 1995) (holding a court has authority to modify or vacate an injunction "if over time, there has been a substantial change in the facts or law."). Since this case involved a consent order, it also makes sense to require Wanda to prove a changed condition or circumstance for the court modify it.

At the hearing on Wanda's request to modify, the court set forth the standard it was applying as "not whether or not [Tim] violated the terms of the no-contact order. It is merely whether the no-contact order should be amended." The court did not apply either a preponderance of the evidence or a substantial-change-in-circumstances standard in determining that the consent order should be amended. The court only provided the rationale that the decision was "based on the inability of the parties to communicate in a civil manner." This was error.

On our de novo review, we apply these legal standards to the evidence presented at the modification hearing. Wanda acknowledged that Tim had complied with the provisions of the consent order. She did not allege any change in his conduct toward her. A review of the hearing transcript reveals no change in conditions or circumstances since the entry of the consent order. Wanda's only complaint was that Tim was not doing enough work on the house during the times he was permitted to be there. No threat of any kind showed Tim should not have access to firearms, as provided in the original consent order. The court stated that the consent order should be modified because "of the inability of the parties to communicate in a civil manner." There is also insufficient evidence in the record to support this finding by the trial court. The record included several text conversations—the only kind of communication they were permitted according to the original consent order—the parties were able to arrange time for Tim to work on the house. The only change was in Wanda's perception of Tim's work progress. Applying the proper legal standard to the evidence, there was no basis for the court to modify the consent order.

## 2. Whether the appeal is moot as to the modification of the consent order regarding work on the Tipton house.

The consent order provided that Tim could work on the exterior of the Tipton home until December 31, 2017. Wanda contends that since the December end date has passed, Tim's appeal in this regard is moot.

> Ordinarily, an appeal is moot if the "issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy." *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002). We will generally not review moot issues, but our case law and that of other jurisdictions recognize exceptions. Relevant to this appeal, one exception permits appellate review of otherwise

> moot issues when the issue is one of broad public importance likely to recur. *Id.; In re M.T.*, 625 N.W.2d 702, 704 (Iowa 2001). Another exception provides that an appeal is not moot if a judgment left standing will cause the appellant to suffer continuing adverse collateral consequences. *See Sibron v. New York*, 392 U.S. 40, 53–57, 88 S.Ct. 1889, 1898–1900, 20 L.Ed.2d 917, 929–31 (1968).

*In re B.B.*, 826 N.W.2d 425, 428–29 (Iowa 2013).

Tim did not seek a stay to preserve the status quo beyond the December 31 end date. Even if we reverse the district court and reinstate the original consent order, this provision regarding work on the house is no longer in effect. Wanda cites the case of *Nitta v. Kuda*, 89 N.W.2d 149 (1958). In *Nitta*, the court held an appeal moot when a contract that terminated in December 1949 had a non-compete clause in effect for five years after the termination of the contract. *Id.* at 149. Since the court did not hear the case until 1958 and the contract provisions ended in 1954, the court found the plaintiff was not entitled to any further injunctive relief. *Id.* at 151. Similarly, here our decision regarding the provision involving Tim working on the Tipton house is of no effect and is therefore moot.

However, the provision in the consent order regarding the Tipton house is not the only one for review. The district court also modified the consent order that the Cedar County Sheriff not release the firearms to Tim so long as the modified protective order is in place or until further modified. Since we have found that the district court had no basis to modify the consent order, that provision of the order should have remained in effect, and Tim was entitled to retrieve his weapons from the Cedar County Sheriff after October 1, 2017. We do not need to dismiss the entirety of the appeal for mootness.

**IV. Conclusion.**

As the district court applied an incorrect legal standard in determining the consent order should be modified, and upon our de novo review no evidence supported a finding of a change in conditions or circumstances or the district court's finding that the parties cannot communicate in a civil manner, the order of protection amended filed on September 26, 2017 is reversed, and the protective order by consent agreement filed on August 25, 2017, is in effect.

**REVERSED AND REMANDED.**